UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


TONY LAMMART HARRIS

      Petitioner,

v.                                          Case No. 6:07-cv-1468-GAP-GJK

SECRETARY, Department of Corrections,
et al.,

      Respondents.
_____/

# O R D E R

Tony Lammart Harris ("Harris") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 27) and challenges the validity of his state convictions for possession of a firearm by a violent career criminal and dealing in stolen property. Harris alleges the denial of the effective assistance of both trial and appellate counsel.

## Facts[1] & Background

Victim James Johnson's ("Johnson") home was burglarized. Items stolen from his home included multiple rolls of rare coins, jewelry and a pistol. Later on the day of the burglary, Johnson made contact with Harris, asking Harris if he had any coins for sale. Harris produced one of the coins stolen from Johnson's home. Johnson called the police who responded to the home of David Gaines ("Gaines") where Harris was located. With Gaines's permission, police searched the house and discovered jewelry, a pistol and other items belonging to Johnson. A search of Harris produced other coins and jewelry matching

---

[1] This summary of facts derives from the parties' appellate briefs and testimony adduced at trial.

the description of items taken from Johnson's home.  Harris was arrested and admitted he was in possession of a pistol.  As a result of these events, Harris was charged by an amended information with possession of a firearm by a violent career criminal (Count 1) and dealing in stolen property (Count 2).[2]  (Dkt.15, Ex. A, p. 30).

Harris was found guilty following a jury trial (Dkt. 15, Ex. A, p. 84) and sentenced to life imprisonment.[3]  (Dkt. 15, Ex. A, pp. 135-37).  He appealed his conviction for possession of a firearm and the state district court of appeal affirmed the conviction and sentence in a *per curiam* decision without a written opinion.  (Dkt. 15, Ex. D).  *See Harris v. State*, 923 So. 2d 512 (Fla. 5th DCA 2006) [Table].

Harris next filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850.  (Dkt. 15, Ex. F).  The state court denied the motion (Dkt. 15, Ex. F) and the state district court of appeal *per curiam* affirmed that denial without a written opinion.  (Dkt. 15, Ex. I).  *See Harris v. State*, 945 So. 2d 522 (Fla. 5th DCA 2006) [Table].

Harris filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Florida.  The case was transferred to this court.  (Dkt. 1).  While this case was pending, he filed a state petition for the writ of habeas corpus alleging ineffective assistance of appellate counsel (Dkt. 31, Ex. K) and an amended Rule 3.850 motion (Dkt. 31, Ex. O).  Harris moved to have this federal habeas petition stayed pending exhaustion of his state court remedies (Dkt. 20).  This court granted the motion (Dkt. 21) and stayed this case.  The state district court of appeal denied

---

[2] The two charges were severed before trial.  Harris entered a *nolo contendere* plea to the dealing in stolen property charge and proceeded to trial on the possession of a firearm charge.

[3] He was sentenced on the dealing in stolen property charge to ten years imprisonment to run concurrent to his sentence for the possession charge.  (Dkt. 30, Ex. A, pp. 155-56).

the state habeas petition without elaboration. (Dkt. 31, Ex. N). The amended Rule 3.850 motion was denied as successive. (Dkt. 31, Ex. P). The state district court of appeal *per curiam* affirmed the denial of the amended Rule 3.850 motion without a written opinion. (Dkt. 31, Ex. S). *See Harris v. State*, 986 So. 2d 618 (Fla. 5th DCA 2008).

Harris then moved to reopen this federal habeas case and to amend his petition. (Dkt. 25). This court granted his motion (Dkt. 26) and directed Harris to file an amended petition including all claims for relief. He filed his amended petition (Dkt. 27) to which Respondents have filed a response (Dkt. 29) and additional appendices (Dkt. 31).[4] Harris thereafter filed a reply (Dkt. 35). The case is now ripe for review.

Respondents do not challenge the timeliness of this amended federal habeas petition. Upon review, the petition must be DENIED.

### Standard of Review

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

---

[4] In their response (Dkt. 29, p.7, n. 3) Respondents address the claims presented in both Harris's original and amended petitions. The order (Dkt. 26) directing Harris to file an amended petition instructed him to include all of his claims in his amended petition. Rule 4.01 of the Local Rules of the Middle District of Florida provides: "Unless otherwise directed by the Court, any party permitted to amend a pleading shall file the amended pleading in its entirety with the amendments incorporated therein." Pursuant to Rule 4.01, Harris's amended petition supersedes his original petition. *See Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.") (citations omitted). Accordingly, the court considers only the claims presented in Harris's amended petition (Dkt. 27).

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Harris's conviction and sentence were affirmed on direct appeal in a *per curiam* decision without a written opinion. The denial of Harris's subsequent Rule 3.850 motions for post-conviction relief were likewise affirmed on appeal in *per curiam* decisions without a written opinion. The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

Harris has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

**Standard for Ineffective Assistance of Counsel Claims**

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

5

2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Harris must demonstrate that counsel's error prejudiced the defense. *Strickland*

*v. Washington*, 466 U.S. at 691-92.  To meet this burden, Harris must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland v.  Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland v. Washington*,  466 U.S. at 690-91.  Harris cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

**Exhaustion and Procedural Default**

Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. at 842. *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d at 1358-59 (*quoting O'Sullivan v. Boerckel*, 526 U.S. at 845). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (*quoting Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition

against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson v. Campbell*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. at 495-96; *Henderson v. Campbell*, 353 F.3d at 892. "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at

892; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## Discussion

### Ground One

Harris contends that his trial counsel rendered ineffective assistance by failing to object to the prosecution's introduction of his prior convictions. He claims that counsel could have objected and stipulated to the prior convictions rather than having the jury hear the nature of his past offenses and the prison sentences served for each conviction. He further claims in his supporting memorandum that if counsel had objected, the jury would have heard about none of the prior convictions and absent counsel's failure to object, the outcome of his trial would have been different. Respondents argue that this claim of the amended petition is unexhausted and procedurally defaulted.

In his reply (Dkt. 35, p. 2), Harris points to ground three of his first Rule 3.850 motion to refute Respondents' argument that this claim is unexhausted, claiming that "the trial court construed [his] claims as [he] actually intended [the] claim to be presented." He argues that the state court characterized and considered his claim as one of ineffective assistance for failing to object to the introduction of his prior convictions, the claim he now presents in ground one of this amended federal habeas petition.

Contrary to his contention, a review of ground three of Harris's first Rule 3.850 motion shows that he presented a claim of ineffective assistance for failure to appoint an

expert witness. He did not, however, present an independent substantive claim for relief challenging counsel's alleged failure to object to the introduction of his prior convictions. His attempt to characterize his Rule 3.850 claim and its supporting facts as sufficient to exhaust his federal claim for failure to object is misplaced.

While it is not necessary that a petitioner present in a federal habeas proceeding a verbatim restatement of the claims brought in state court, in cases presenting ineffective assistance of counsel claims, the Eleventh Circuit has held that habeas petitioners may not present particular factual instances of ineffective assistance in their federal petitions that were not first presented to the state courts. *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); *Johnson v. Singletary*, 162 F.3d 630, 634-5 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). When a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts for the same claim in his federal habeas proceeding, he has failed to fairly present the federal claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (internal citations omitted). *See also Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance of counsel in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").

Harris cannot now raise his claim of ineffective assistance based on counsel's failure to object to the introduction of his prior convictions because the claim would be

procedurally barred.  *See* Fla. R. Crim. P. 3.850(b), (f).  *See also Tafero v. State*, 561 So.2d 557 (Fla. 1990) (additional claims of ineffective assistance of counsel cannot be raised in a successive motion for post-conviction relief where ineffectiveness was raised and addressed in the first motion).  Portions of a petitioner's claim that are not exhausted but would clearly be barred if returned to state court must be dismissed.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

Because Harris fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies, ground one is procedurally barred from federal review.[5]

**Ground Two**

Harris contends that his trial counsel rendered ineffective assistance by failing to move to suppress his allegedly coerced confession.  He argues that his post-arrest statements were obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that he advised counsel that the police investigator had not read him his *Miranda* warnings.  He claims that counsel's failure to move for suppression of his confession resulted in a violation of his right to due process and that if counsel had filed the motion, the jury would not have convicted him.

Respondents argue that the ineffective assistance claim presented in ground two is unexhausted and procedurally defaulted.  (Dkt. 29, p. 15).  Harris argues in his reply that "the substance of the amended claim was raised in the due process claim in the State

---

[5]  Alternatively, even if these claims were exhausted, they warrant no relief.  Harris fails to demonstrate that if counsel had objected as he now suggests, the outcome of the trial would have been different.  He fails to demonstrate prejudice as a result of trial counsel's alleged error.  In the absence of prejudice, a claim of ineffective assistance of counsel cannot succeed because the requirements of *Strickland* remain unsatisfied.

motion" and that "[t]his court would be allowed to grant relief on the due process claim . . . not withstanding the ineffective assistance of counsel [claim] for failing to [move to] suppress." (Dkt. 35, pp. 11-12). He further argues that the state court erred in denying this due process claim in his second Rule 3.850 motion. It appears from Harris's reply that he seeks relief on both an ineffective assistance claim and a substantive due process claim.

To the extent that ground two asserts an ineffective assistance claim based on counsel's failure to file a motion to suppress, Respondents are correct that the claim is unexhausted. Harris presented this claim to the state court in his amended Rule 3.850 motion. (Dkt. 31, Ex. O). The state court dismissed that motion as successive. (Dkt. 31, Ex. P). Consequently, this ineffective assistance claim remains unexhausted.

Generally, before a claim is procedurally barred from federal habeas review, a state court must reject reviewing an incorrectly presented claim. The fact that a federal habeas petitioner failed to abide by a state procedural rule does not, standing alone, prevent a federal court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (*quoting Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). *See also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) ("[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground."). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim

without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner". *Judd v. Haley*, 250 F.3d at 1313 (*citing Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)). *See also Ford v. Georgia*, 498 U.S. 411, 424-25 (1991).

The state court rejected Harris's amended Rule 3.850 motion as a successive. *See* Fla. R. Crim. P. 3.850(f).[6] The state district court of appeal affirmed the application of the procedural bar (Dkt. 31, Ex. S). *See Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review). Florida courts consistently apply the procedural rule that a second or successive post-conviction motion that alleges new and different grounds than a defendant's first motion is an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first Rule 3.850 motion. *See e.g.*, *Spaziano v. State*, 545 So.2d 843, 844 (Fla. 1989); *Christopher v. State*, 489 So.2d 22 (Fla. 1986). Clearly Harris offered no such justification to the state court. Thus, his ineffective assistance claim for failure to file a motion to suppress his confession is procedurally defaulted. Because Harris fails to demonstrate

---

[6] Rule 3.850(f) provides:

(f) Successive Motions. A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

Fla. R. Crim. P. 3.850(f).

cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies, this claim of ground two is procedurally barred from federal review.

To the extent that Harris's ground two, liberally construed, *see Haines v. Kerner*, 404 U.S. 519 (1972), presents a substantive due process claim based on his allegedly illegally obtained confession, he is not entitled to relief. In his first Rule 3.850, he argued a violation of his Fourteenth Amendment rights, claiming that his confession was obtained without his first receiving *Miranda* warnings. (Dkt. 15, Ex. F). The state court denied relief[7] and the state district court of appeal affirmed the denial.[8] As expounded upon in his supporting memorandum (Dkt. 27, Ex. 2), Harris appears to raise the same argument in this amended federal habeas petition.

The record shows that Investigator James Clark ("Clark") of the Seminole County Sheriff's Office testified on direct examination that he advised Harris of his *Miranda* rights.[9]

---

[7] In first Rule 3.850 motion, Harris specifically argued that his confession was obtained in violation of the Fourteenth Amendment. He did not present his claim as one of ineffective assistance nor did he argue that a motion to suppress should have been filed on his behalf to exclude the allegedly illegally obtained confession. The state court in its denial of relief construed Harris's argument as a claim "that his confession was given without being advised of or voluntarily waiving his *Miranda* rights." (Dkt. 15, Ex. F). Despite this characterization, the state court concluded that "a motion to suppress would not have been successful" and that Harris failed to meet his burden under either prong of *Strickland*. It appears that although Harris did not present his claim as one of ineffective assistance, the state court construed it as such. To the extent that this mischaracterization does not equate to a ruling on the merits of the due process claim, this court considers the merits of that claim without deference to the state court's ruling.

[8] Respondents do not address Harris's due process claim in their response.

[9] Clark stated that he did not have a tape recorder at the time he read actually read Harris his rights:

> State: At that point, first of all, was there another - - had you made a request of a tape recorder from another deputy about the time that you were reading him Miranda rights?
>
> Clark: Yes, I was. Unfortunately, I was unprepared because I was on another assignment at the time I receive [sic] the call.

(continued...)

(Dkt. 15, Ex. A, pp. 192-96). The prosecution introduced into evidence a tape recording of Harris's statement to Clark (Dkt. 15, Ex. A, pp. 230-35) in which Harris acknowledged that Clark had read him his rights.[10] Harris points to his sworn affidavit attached to his first Rule 3.850 motion (Dkt. 15, Ex. F) to support his contention that Clark did not read him his *Miranda* warnings. There is no evidence in the record and Harris fails to provide any, other than his own self-serving affidavit, that he did not receive his *Miranda* warnings. Harris fails to demonstrate by objective record evidence a violation of any federal constitutional right based on any alleged deficiency in Clark's advisement of Harris's rights. Consequently, no federal habeas relief is warranted on this claim of ground two.

**Ground Three**

---

[9](...continued)

> I was not prepared. I did not have the recorder at the time. As I was reading Mr. Harris his Miranda warnings, I asked requested [sic] of Investigator Hartner if he had has [sic] recorder. I then commenced with the reading of the Miranda warnings.
>
> Investigator Hartner provided me we [sic] a digital recorder at which time I turned it on a prefaced [sic] the tape and asked Mr. Harris if he understood his rights.

State: Did you turn on the tape about the time that you [sic] started telling you his account?

Clark: He had just begun to speak of it as I got the recorder.

(Dkt. 15, Ex. A, pp. 195-96).

[10] The recorded statement begins:

Clark: Yes, you are under arrest right now for being in possession of this stuff, but the question is, are you gonna [sic] get charged with armed residential burglary? Okay. Now, I just read your, your [sic] Miranda rights, so you understand your rights?

Harris: Yes.

(Dkt. 15, Ex. A, p. 230).

Harris contends that his trial counsel rendered ineffective assistance by failing to object to the introduction of his confession when the prosecution established the *corpus delecti* of the possession of a firearm charge by a legal presumption. He presented this claim as ground three of his amended Rule 3.850 motion. (Dkt. 31, Ex. O). Respondents correctly argue that this claim is unexhausted and procedurally defaulted because the state court denied the amended Rule 3.850 as successive under state procedural rules. (Dkt. 31, Ex. P). Because Harris fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies, ground three is procedurally barred from federal review.[11]

**Ground Four**

Harris argues his trial counsel rendered ineffective assistance by failing to investigate and call as witnesses David Gaines ("Gaines") and Elaine Smiley ("Smiley"). He alleges that Gaines and Smiley would have testified that a man named "George" was the source of the stolen property, that George brought the items to Gaines's house, and that Harris had some rare coins in his possession approximately two and a half weeks before the night of his arrest. Harris further claims that counsel's failure to call Gaines and Smiley as witnesses was an unreasonable strategic choice and that if counsel had called them to testify, the jury would have acquitted him.

Harris presented his claim with respect to Gaines to the state court in his original Rule 3.850 motion. The state court denied the claim as facially insufficient:

---

[11] Notwithstanding, even if this ground were exhausted and properly before the court for review, Harris is not entitled to relief. Contrary to his contention, trial counsel did object to the introduction of his confession specifically challenging its admission based on the prosecution's failure to establish the *corpus delecti* of the possession of a firearm charge. (Dkt. 15, Ex. A, pp. 194-210, 225-27). Consequently, Harris cannot establish either deficient performance or consequent prejudice as required by *Strickland*.

The defendant's fourth claim is that counsel failed to conduct [a] reasonable investigation before trial. He claims that counsel could have called David Gaines to "provide reliable evidence that [he] was in a position to witness the events involving the [defendant]." This claim is facially insufficient because the defendant has failed to proffer Mr. Gaines'[s] expected testimony or to state the manner in which he was prejudiced by the failure to call Mr. Gaines. As such, this claim is insufficiently pled.

(Dkt. 15, Ex. F). Harris again raised this claim in his amended Rule 3.850 which the state court denied as a successive motion. (Dkt. 15, Ex. P). As Respondents correctly contend, this claim is unexhausted and procedurally defaulted as the state court did not review the claim on the merits.

Harris's claim with respect to counsel's failure to call Smiley as a witness also fails because he never presented such a claim to the state court in either of his Rule 3.850 motions. His assertion in his reply that his use of the term "witnesses" in his state motions was sufficient to include both Gaines and Smiley lacks merit. Under Florida law, "the failure to call witnesses can constitute ineffective assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt, and the defendant states in his [post-conviction] motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." *Marrow v. State*, 715 So.2d 1075 (Fla. 1st DCA 1998). Harris's general complaint of uncalled witnesses in his state post-conviction motions lacks specificity and is insufficient to support a finding that he properly presented his ineffective assistance claim for failure to call Smiley as a witness to the state courts for review. Harris's failure to this particular factual instance of ineffective assistance to the state courts leaves this claim unexhausted. *See Anderson v. Harless*, 459 U.S. at 6; *Weeks v. Jones*, 26 F.3d at 1044-46.

Harris cannot now raise his claim of ineffective assistance based on counsel's failure to investigate and call Gaines and Smiley as witnesses in state court because the claim would be procedurally barred. *See* Fla. R. Crim. P. 3.850(b), (f); *Tafero v. State*, 561 So.2d at 557. Because Harris fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies, ground four is procedurally barred from federal review.

**Grounds Five and Six**

Harris presents two claims of ineffective assistance of appellate counsel. Respondents contend that these claims are time-barred under the AEDPA and do not relate back to Harris's original federal habeas petition (Dkt. 2).

Harris's convictions became final on May 8, 2006, when the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court expired. *See* Sup. Ct. R. 13.3.[12] *See also Nix v. Sec'y, Dep't of Corr.*, 393 F.3d 1235, 1236-37 (11th Cir. 2004) (Florida prisoner's conviction "final" for AEDPA purposes when the 90-day period for seeking certiorari review in the Supreme Court expired). Harris had one year from that date, until May 8, 2007, to file a timely federal habeas corpus petition.

The limitations period was tolled when Harris filed his first Rule 3.850 motion in state court on July 13, 2006. As of that date, 66 days of the limitation period had expired. The limitation period remained tolled until January 12, 2007, when the state district court of appeal issued its mandate on the denial of Harris's first Rule 3.850 motion. As of that date,

---

[12] "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, ... the time to file the petition for a writ of certiorari for all parties ... runs from the date of the denial of rehearing." Sup. Ct. R. 13.3. Harris did not file a motion for rehearing following the affirmance of his convictions and sentences on direct appeal.

299 days of the limitation period remained (365 days minus 66 days elapsed and not tolled), thus giving Harris until November 7, 2007, to timely file a federal habeas petition.

Harris timely filed[13] his original federal habeas petition (Doc. 1) on May 29, 2007. He did not present his ineffective assistance of appellate counsel claims in his original petition (Dkt. 2). On December 24, 2007, Harris filed his state habeas petition alleging the ineffective assistance of appellate counsel claims he now asserts as grounds five and six of his amended federal habeas petition. Respondents contend that Harris's state habeas petition was filed beyond the one year limitation period under 28 U.S.C. § 2244(d)[14] and that this court should not consider these untimely claims because they do not relate back to the original federal habeas petition.

Although Harris ultimately presented his ineffective assistance of appellate counsel claims to the state court in his state habeas petition, that petition was filed after he filed his

---

[13] In calculating the limitations period under the AEDPA, the court gives Harris the benefit of the "mailbox rule" and considers his Section 2254 petition as "filed" on the date he signed and delivered the petition to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adams v. United States,* 173 F.3d 1339, 1341 (11th Cir. 1999).

[14] Pursuant to 28 U.S.C. § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") on April 24, 1996, a federal petition for writ of habeas corpus must be brought within one year from the latest of the following:

    (A)    the date on which the judgment became final by the conclusion of direct review or
           the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in
           violation of the Constitution or laws of the United States is removed, if the applicant
           was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the
           Supreme Court, if the right has been newly recognized by the Supreme Court and
           made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have
           been discovered through the exercise of due diligence.

§ 2244(d)(1)(A-D).

original Section 2254 petition. That original petition did not toll the AEDPA limitations period. *See Duncan v. Walker*, 533 U.S. 167, 172 (2001) ("[A] properly filed federal habeas petition does not toll the [AEDPA] limitation period."). Consequently, Harris's ineffective assistance of appellate counsel claims, raised for the first time in this court in his amended federal habeas petition, are untimely. He cannot now present these two claims for federal habeas relief unless he demonstrates that they relate back to the claims of ineffective assistance of trial counsel raised in his timely-filed original federal petition.

In his reply, Harris relies upon Federal Rule of Civil Procedure 15(d) to argue that these two grounds are properly before the court because "this court has the discretion to entertain the amendments as they are the product of properly filed documents and pleadings pertinent to this case, but litigated after the date of the filing of the original petition." (Dkt. 35, p. 13). Rule 15(d) concerns the standards for submitting "a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." However, Rule 15(d) is inapposite. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504 (discussing difference between amended and supplemental pleadings under Rule 15). This court ordered Harris to filed an *amended* petition, not a supplemental one. (Dkt. 26). None of the events underlying Harris's ineffective assistance of appellate counsel claims occurred after he filed his original petition in May 2007. His amended petition cannot be considered as a supplement to his original petition. Notwithstanding, even if considered as supplemental claims, grounds five and six would have to either be timely filed or relate back to the claims presented in the original petition. *See* Fed. R. Civ. P. 15(c).

Federal Rule of Civil Procedure 15(c)(1) provides, in pertinent part, that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Relation back depends upon the existence of a common "core of operative facts" uniting the original and newly asserted claim. *Mayle v. Felix*, 545 U.S. 644, 662-63 (2005). "The untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). "[T]he untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Davenport v. United States*, 217 F.3d at 1344 (citations omitted).

Harris's claims of ineffective assistance of appellate counsel are distinctly separate from his claims of ineffective assistance of trial counsel raised in his original petition in which he presented no claims of ineffective assistance of appellate counsel. The only fact that the original and amended claims have in common is that they relate to the *corpus delecti* issue. Trial counsel's conduct during the trial and appellate counsel's conduct on appeal are distinct in both time and type. *See Davenport v. United States*, 217 F.3d at 1344. Grounds five and six do not relate back to the timely filed claims alleged in the original petition and are time-barred.

Accordingly, Harris's amended petition for the writ of habeas corpus (Dkt. 27) is

**DENIED**.  The clerk shall enter a judgment against Harris and close this action.

ORDERED in Orlando, Florida, on April 22, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE